Bradbury, J.
The defendants in error, who were also defendants in the Court of Common Pleas, admitted in their answer to the petition of the plaintiff, that they were the owners of a leasehold estate in the premises on which the building was being constructed, and that the street and sidewalks upon which it was situated constituted a thoroughfare on which there was “a large amount of travel,” but they denied every other allegation of the petition. Notwithstanding this, however, there is no real controversy in the evidence over any material fact in the case except as to the kind and quality of the boards that were laid over the hole into which plaintiff fell, and the extent of the injury he sustained thereby. The main contention of the defendants being that the work was being done by an independent contractor, and that the negligence, if there was any, was that of the servants of the latter, over whom defendants had no control, and for whose acts they were not responsible.
Upon this theory of the case the defendants on the trial in the court of common pleas, requested that court to instruct the jury as follows:
If the jury find from the evidence that the defendants had let the work of constructing the building and area in question to contractors, who were to do all the work and furnish all the materials on their own credit, with their own means, and that the defendants, while the work was in progress, had no possession or occupancy of the premises, and *76 had no control of the mode or manner in which said contractors should do the work, other than to accept or reject the work as being in compliance or non-compliance with the contract, then the defendants are not responsible for any injury resulting to the plaintiff in consequence of the negligence of said contractors or any of their employes in not guarding the said area with proper protections or coverings.”
This instruction the court refused to give to the jury, and the defendants excepted. The doctrine contained in the instruction thus requested and refused is in strict accord with the holding of this court in Clark v. Fry, 8 Ohio St. 358, from which we are not inclined to recede, where the facts make it applicable, but on the other hand are not disposed to extend it to other states of fact not strictly analogous to those of that case. The instruction thus asked and refused assumes that evidence had been submitted to the jury from which they could find a state of fact in all. essential respects like that in Clark v. Fry, supra; that is, that the defendants had let the work of constructing the building to independent contractors, and had given to them the entire control and occupancy of the premises while the work was in progress.
If the evidence did not tend to prove such a state of facts as the instruction assumed, the proposition of law which it embraced was an abstract one, and the refusal to give it to the jury was not error. It becomes necessary, therefore, to ascertain whether or not evidence had been introduced tending to prove the state of facts thus assumed.
It is true that the circuit court did not reverse the judgment of the court of common pleas because of the refusal to give this instruction, but did so on the ground that certain instructions that were given were erroneous; nevertheless, it becomes necessary to determine whether the rule declared by this rejected instruction was applicable to the facts or not, for if so applicable, its rejection was error requiring a reversal of the judgment, and the judgment of reversal should be affirmed, although placed upon some other ground, which, in the opinion of this court was not sufficient to warrant it. In such case the judgment would be the proper *77 one, -whatever may have been the reason assigned for its rendition.
The plaintiff placed his right of action upon this state of facts; that the defendants were constructing a large brick building, and had left a number of openings for areas along the front end of it, each of which extended along the end about twelve feet and out into the sidewalk three or four feet, over which it was their intention to place iron gratings, and that by reason of their neglecting to sufficiently guard these holes, he fell into one of them and was injured; this the defendants denied. They did not, however, attempt to controvert the fact that the openings had been left, into which plaintiff had fallen, but, without pleading that the building was being constructed by an independent contractor, sought to ground their defense upon that circumstance, by requesting the instruction now under consideration.
The only contract respecting the building or its construction disclosed by the record, is one put in evidence by the plaintiff, and which reads as follows:
“The agreement between Wm. Whalen & Chas. Steg-kemper, first party, and John Gawne & Sons, second party, witnesseth: That the specification and plans signed by parties, and every clause thereof, is made'a part of this agreement, and said second party hereby agrees to begin as soon as possible after July 1,1883, and to do, perform, finish and complete, in the manner therein stated, all the work set forth and referred to in said specification, etc., in ninety days from commencement. Said second party further agrees to furnish all the material necessary to the completion of said work as set forth in said specification, etc.
“Said first party agrees to pay said second party for said work at the rate of seventy-five per cent., as the work progresses; six thousand, seven hundred and fifty dollars being paid by the time said work is finished, and the balance two thousand, two hundred and fifty dollars to be paid in monthly installments, and in not more than ten months from the completion of said work.
*78 “If any alteration of, or addition to said building, or any part thereof, should be directed by said first party, such alteration or addition shall be estimated at the rate of ($10) ten dollars per thousand for brick work, and ($3.25) three dollars and twenty-five cents per perch for some stone work; both laid and completed wherever used. All other parts at the same rate as this contract price $9,000, is based on. And if by such alteration or addition any work included in said specification, etc., is not done, the value of such work shall be deducted from the price agreed to be paid for the whole, and estimated in like manner as last mentioned.
“Said second party shall dismiss any hands employed by him in said work, whenever said first party shall so direct and give a substantial reason for.
“ In witness whereof, the said parties have hereunto set their hands and seals, this fifteenth day of February, A. D. 1883. '
“(Insertion made before signing.)
“William Whalen,
“C. Stegkempee,
“JOHN GAWNE & SONS.”
Under the specifications referred to in the contract it was the duty of the contractors to furnish materials for and perform only that part of the work of construction that is usually done by masons and plasterers ; with the excavation, the wood work, painting, plumbing, etc., they had nothing to do. There is some evidence tending to prove that the wood work was also under contract, but to whom and upon what terms, the record is silent. As respects the balance of the work, including the making of the excavations for cellars, areas and coal vaults, there is no evidence tending to show that it was performed under the direction or control of any one except the defendants themselves. It is true that the contractors, Gawne & Sons, took a portion of the earth from the excavation and used it in making mortar for their work on the building, it appearing to contain a sufficient proportion of sand for that purpose; but this was done for their own convenience, by consent of defendants and without any contractual obligation on the part of Gawne & Sons *79 to do so. An examination of the contract between Gawne & Sons and the defendants will disclose that it contains no stipulation giving to those contractors the occupancy, possession or control of the premises ; nor does the record disclose any other evidence tending to show they had, or were entitled to have, such occupancy, possession and control. On the contrary, the undisputed testimony on both sides shows that in fact they did not have such occupancy, possession and control, for the work of making the excavation, as well as the carpenter’s work was in progress contemporaneously with that of Gawne & Sons under their contract, every part of the work of construction being pressed forward simultaneously, or as nearly so as was practicable. There was, therefore, no evidence tending to prove the state of facts assumed in the rejected instruction, and it was properly rejected. It was an abstract proposition of law, and, however sound, should not have been given to the jury. Lewis v. State, 4 Ohio, 389; Insurance Company v. Paver, 16 Ohio, 324; Steward v. Southard, 17 Ohio, 406; Tracy v. Card, 2 Ohio St. 431; Railroad v. Crawford, 24 Ohio St. 631; Carlisle v. Foster, 10 Ohio St. 198; Callahan v. State, 21 Ohio St. 306.
2. The defendants in the court of common pleas excepted to the following portion of the charge of that'court:
“I mean to be understood by the jury to say, that if these defendants, for- the purpose of constructing this block of buildings, removed, either by themselves or by anybody else — if they caused to be removed this sidewalk and made this excavation and opened this hole into which the plaintiff fell, it is the duty of the defendants, doing that by themselves or by their agents, by their independent contractors, or in any other way — it is their enterprise; they are doing it for their benefit; it is their duty to use ordinary care to see that it is guarded and protected by the use of such ordinary care as men of ordinary prudence are accustomed to employ in that kind of enterprise. It is no defense for them to say that the work was being done by an independent contractor.”
*80 This instruction lays down the rule, that if the defendants, “by their independent contractors,” removed the sidewalk and made the excavation into which plaintiff fell, it was their duty to use ordinary care to see that it was guarded and protected. If a construction, as broad as the language used will warrant, should be given to this instruction, it must be held to lay down the rule that if the plan of the building made necessary an excavation in the adjoining sidewalk, the defendants could not have exonerated themselves from the duty of exercising ordinary care in guarding the excavation after it was made, even by an agreement with an independent contractor, providing that the latter should furnish all of the material and perform all the work including the excavation necessary to its construction, and have the sole occupancy and control of the premises while performing the contract. The rule thus broadly stated directly contravenes the doctrine of Clark v. Fry, 8 Ohio St. 358, and cannot be maintained without overruling that case.
If, however, this language of the learned judge should be taken in a more restricted sense, and as designed to declare that one, intending to construct a building on a plan that requires an excavation to be made in the adjacent public sidewalk, cannot divide the work of construction and let to an independent contractor the work of excavating, only, and thereby shift from himself to such contractor the duty of guarding the excavation while it was being made or after-wards, then the principle underlying the instruction does not necessarily conflict with the doctrine of Clark v. Fry, supra, provided the doctrine of that case is to be strictly limited to the facts upon which it was announced, and the tendency of this court in that direction is perhaps to be fairly indicated from the decision in the case of Railroad Co. v. Morey, 47 Ohio St. 207.
There is much innate justice in a rule of law that declines to permit one, who causes work to be done, the performance of which, though not necessarily injurious to the persons or property of others, yet necessarily creates conditions inimical to their safety, to exonerate himself from all duty towards those whom he has thus exposed to danger.
*81 As already shown in this opinion, however, there is no evidence in the record tending to prove that a contract was made letting to an independent contractor either the entire work of constructing the building, or that of making the excavation only; so the propositions of the charge, if they are fairly inferable from the language used, denying the sufficiency of such contracts to exonerate the defendants from liability, are abstract, and if erroneous, would not warrant a reversal of the judgment of the court of common pleas unless clearly misleading in their character. French v. Millard, 2 Ohio St. 44; Schneider v. Hosier, 21 Ohio St. 98. It is not easy to perceive how the jury in this case could have been misled by a statement to them that the defendant could not exonerate himself from liability to the plaintiff, by letting the excavation, alone, or the entire work, to an independent contractor, when no such contract had been either plead or proved.
If this charge is to be construed as laying down the rule, that if the defendants themselves had made the excavation, and thus made a hole in a public street into which travelers in passing would probably fall if it was not properly guarded, could not turn it over to a contractor to build the vaults and walls, which the excavation was made to accommodate, by a contract, giving a temporary occupancy and control of the excavation to the contractor, and thus relieve themselves of further care in guarding the hole, then we hold the proposition to be sound as well as fairly applicable to the facts of the case.
As already mentioned, the undisputed facts are that the excavation was made by the defendants, and was in the sidewalk of a public street. It was dangerous unless carefully guarded. The defendants, having created the danger, were bound to exercise reasonable care to protect the public against injury on account of it, unless they could shift that duty from themselves to others. If the plaintiff fell into the hole and was injured by reason of the omission of such care, the defendants were liable, unless they had in fact escaped that duty. The only evidence from which it could be claimed they had accomplished this result, was the fact that *82 the construction of the coal vaults and area walls in the excavation was let to independent contractors who had a right to occupy the excavation for that purpose only, and that the contractors were-using the holes, into one of which the plaintiff fell, for the purpose of mixing and handling mortar for their own convenience, to be used on other parts of the building. We do not think this was sufficient to shift from the defendants the duty to guard an excavation made by themselves. The danger was of their own creation, and they should be held bound to provide against it, and not allowed to abandon this duty to the contractor or his servants, or if they did so it was at their peril, and therefore the instruction of the court, now under consideration, which, under such circumstances imposed upon the defendants the obligation of using ordinary care in guarding the excavation, was a correct exposition of the law upon the subject.

Judgment of the circuit court reversed and that of the common pleas affirmed.